UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. WHITING, ) | CIV. 12-5005-JLV |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**INTRODUCTION**

On December 17, 2009, Plaintiff Michael J. Whiting applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-33 (2006). (Administrative Record, pp. 136-42).[1] An Administrative Law Judge ("ALJ") held an evidentiary hearing on August 22, 2011. (AR, p. 21). At the administrative hearing, Mr. Whiting amended his disability onset date to December 31, 2008. (AR, p. 24). Plaintiff alleges he suffers from severe medical impairments including a cognitive disorder, depression, an anxiety disorder, migraine headaches, and chronic back pain and is disabled under the Social Security Act. (Docket 1 at ¶ 3). On August 31, 2011, the ALJ concluded Mr. Whiting was not disabled and he was denied benefits. (AR at pp. 5-20). The Appeals Council denied

---

[1]The court will cite to information in the administrative record as "AR, p. ___."

plaintiff's request for review. Id. at pp. 1-4. The decision of the ALJ became the final decision of the Commissioner.[2] Id. Plaintiff timely filed his complaint. (Docket 1).

The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 9). If there were any disputed facts, the parties were required to attach a separate joint statement of disputed facts. Id. The parties filed their JSMF. (Docket 10). Plaintiff then filed a motion for an order reversing the decision of the Commissioner. (Docket 11). For the reasons stated below, the motion is denied and the decision of the Commissioner is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 10) is incorporated by reference. Further recitation of salient facts is included in the discussion section of this order.

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). The court reviews the

---

[2]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin is automatically substituted for Michael J. Astrue as the defendant in all pending social security cases. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2

Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).

"Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted). Substantial evidence is evidence that a reasonable mind might accept as adequate to support the Commissioner's decision. Choate, 457 F.3d at 869 (quoting Ellis v. Barnhart, 392 F.3d 988, 993 (8th Cir. 2005)). The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would have decided the case differently, it cannot reverse the Commissioner's decision if the decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an

opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

## DISCUSSION

"Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [or combination of impairments] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR § 404.1520(a)(4). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment–one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy that the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). The ALJ applied the five-step sequential evaluation required by the Social Security

4

Administration regulations.  (Docket 10 at ¶ 2).  At step five of the evaluation, the ALJ found Mr. Whiting could perform jobs which exist in significant numbers in the national economy and he was, therefore, not disabled.  Id. at ¶ 3.

## PLAINTIFF'S ISSUES ON APPEAL

Plaintiff's brief in support of his motion to reverse the decision of the Commissioner identifies three issues.  (Docket 12).  Those are:

1. The Commissioner's finding that plaintiff's subjective complaints of symptoms and functional limitations are not credible is not supported by substantial evidence in that the Commissioner improperly evaluated and discredited plaintiff's subjective complaints;

2. The Commissioner's unfavorable decision is not supported by substantial evidence in that the Commissioner improperly failed to grant controlling weight to the treating psychiatrist's assessment of plaintiff's functional restrictions; and

3. The Commissioner erred in concluding that there are jobs existing in significant numbers in the national economy which plaintiff is capable of performing.

Id.  Each issue will be addressed separately.

1.   **THE COMMISSIONER'S FINDING THAT PLAINTIFF'S SUBJECTIVE COMPLAINTS OF SYMPTOMS AND FUNCTIONAL LIMITATIONS ARE NOT CREDIBLE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE IN THAT THE COMMISSIONER IMPROPERLY EVALUATED AND DISCREDITED PLAINTIFF'S SUBJECTIVE COMPLAINTS**

At step two of the evaluation process, the ALJ found Mr. Whiting had "severe impairments: cognitive disorder NOS[3] secondary to mild traumatic brain injury; depression disorder NOS; and generalized anxiety disorder . . . ." (Docket 10 at ¶ 3). "At step three, the ALJ found that Whiting did not have an impairment that met or medically equaled an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1 . . . ." Id. In step four, the ALJ discounted Mr. Whiting's testimony. (AR at p. 18). "After careful consideration of the evidence, the undersigned finds that the claimant's medical[] statements concerning the intensity, persistence and limiting effects of [the claimed disabilities of anger issues, short-term memory problems, migraine headaches, and back issues] are not credible and are not supported by the treating records, the reviewing DDS[4] opinions, and the medical opinion given greatest weight." Id.

---

[3]Not Otherwise Specified.

[4]Disability Determination Services. (AR at p. 12).

Plaintiff objects, asserting the ALJ failed to properly consider Mr. Whiting's subjective allegations under the Polaski[5] standards. (Docket 12 at pp. 3-4). Under plaintiff's application of the Polaski standards, "the ALJ improperly evaluated and discounted Whiting's subjective allegations." Id. at p. 4.

"The ALJ was required to make an express credibility determination explaining why he did not fully credit [claimant's] complaints." Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000). That finding must be "adequately explained and . . . supported by the record as a whole." Id. at p. 972. The ALJ is "not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting [a claimant's] subjective complaints." Id. The ALJ made no specific findings regarding the Polaski factors. However, "[t]he ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

---

[5]Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (To assess a claimant's credibility, the ALJ must consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions.).

7

"At the hearing, the claimant testified he is disabled due to anger issues, short term memory problems, migraine headaches, and back issues." (AR at p. 17; see also Docket 10 at ¶ 48). For each of the four areas of Mr. Whiting's claimed disabilities, the ALJ found inconsistencies between the record and Mr. Whiting's testimony.

**Back Pain**

"Claimant testified he experiences daily back pain at a 3 to 4 pain level usually, but sometimes worse. He indicated long periods of standing, walking, and lifting, and not sleeping right can worsen the pain. . . . Claimant asserted spondylolisthesis at L4-5 and Sl prevented him from working . . . ." (AR at p. 11). This testimony is contradicted by the ALJ's findings:

1. He stated he can walk 1/2 to 1 mile at a time, stand 1/2 hour at a time, sit 1 to 1-1/2 hour [sic] at a time, and lift a maximum of 30 to 40 pounds. Id.

2. [T]he record lacks objective medical findings to support such pain and limits secondary to back pain. Id.

3. VA records note there is no medical imaging (CT scan) nor objective findings to support the severity and frequency of the lumbar pain the claimant asserted . . . . Id.

4. [Two of the C & P[6]] examinations reflect claimant's poor effort on examination, with claimant's

---

[6]VA Compensation and Pension. (AR at p. 10).

        complaints "far" exceeding what was actually observed.  Id.

5.      [C]laimant's lack of medication use for back pain other than Ibuprofen, and lack of medical treatment for the alleged pain.  Id.

6.      No treating or examining physician has assessed claimant with limits related to back pain, and per the reviewing DDS physician, the claimant has no exertional limits.  Id.

The ALJ's findings "adequately explain[]" the decision to reject Mr. Whiting's testimony concerning the severity of any back pain and those findings are "supported by the record as a whole."  Lowe, 226 F.3d at 971-72.

**Short Term Memory Loss**

The ALJ acknowledged Mr. Whiting suffered "a traumatic brain injury (TBI) from a fall . . . while serving in the US. Navy."  (AR at p. 13).  For this disability, Mr. Whiting was "receiving a monthly VA disability pension ($1,000) at approximately 40% for migraine headaches and back pain, and has expressed anger and dissatisfaction with VA over not increasing his pension due to the TBI."  Id. at 18.  Because of Mr. Whiting's frustration with the VA benefits program, the ALJ found Mr. Whiting "has strong financial incentive to exaggerate his report of the severity and frequency of his symptoms, and . . . limitation of function."  Id.

9

But more important to Mr. Whiting's claim, the ALJ found the record to be unsupportive of short term memory loss:

1. "Mental status examination observations [July 22, 2009] noted a dysthymic/agitated mood with congruent affect but no short or long term memory problems. Thought content was focused on negative life struggles, but there was no other observation of mental difficulties or abnormalities." (AR at pp. 13-14).

2. During an "August 18, 2009 session with Dr. Keohane . . . claimant . . . reported he had been off psychotropic medications for 6 months . . . . [but during] an August 24, 2009 VA psychiatric evaluation by C. Haas, MD . . . Claimant stated he had been on and off Citalopram over the past few years, but restarted it 8 months earlier and had been taking it daily since then, or at least fairly regularly since he forgot sometimes. . . . This is inconsistent with his report to Dr. Keohane 6 days earlier . . . and diminishes the credibility of his reports to all practitioners." Id. at p. 14.

3. During the August 24 evaluation with Dr. Haas, "[c]laimant asserted symptoms including depression, isolation, occasional disturbed sleep, diminished appetite for 6 months, diminished energy, hopelessness, helplessness, guilt, and anhedonia. However, he reported his concentration was fine." Id.

4. Also during the August 24 evaluation, "[m]ental status examination observations noted complacent mood . . . restricted affect, and thought processes that were logical, sequential, goal directed. Thought content was negative for abnormalities. Cognition was 3/3 immediately, 1/3 at 5 minutes, and claimant was alert and oriented times 4, with appropriate judgment." Id.

5. On October 26, 2009, Dr. Haas "noted euthymic mood and full affect, with no other significant problems." Id.

6. In the TBI clinic record of May 26, 2010, Mr. Whiting's " 'main concern' was not getting service connected disability for his reported TBI, and he asserted continued memory problems. . . . The doctor referenced prior neuropsychological testing that showed mild to moderate cognitive impairments, but such

        testing is not evidenced in the record, and new testing was advised." Id. at p. 15.

7. During a September 23, 2010, session with Dr. Haas, Mr. Whiting stated "he had . . . missed repeat neuropsychological testing earlier in September 2010, because he didn't have gas money. This indicates claimant does not miss appointments only due to his report that he forgets them." Id. at pp. 15-16.

8. During that same session, Dr. Haas found Mr. Whiting "was fully alert and oriented, and was negative for any indication of concentration problems, noting claimant's thought process was logical, sequential, and goal directed." Id. at p. 16.

9. On November 18, 2010, Mr. Whiting reported to a speech pathology consultant that "he spent most of his time playing an internet game called 'World of War Craft' . . . . This does not support the degree of concentration problems that claimant has asserted." Id.

10. A "Neurobehavioral Cognitive Status Examination . . . administered by speech-language pathology [sic] during the consult, revealed mild to moderate memory deficits as the only deficit, with all other areas noted as in the average range." Id.

11. During a March 23, 2011, appointment, Dr. Haas "indicated claimant had a depressed mood, consistent with claimant's description, and restricted affect. However, no other significant observations were noted on mental status examination." Id. at p. 17.

12. The ALJ noted Dr. Haas's opinion Mr. Whiting was "able to manage benefits in his own interest . . . ." is inconsistent with any finding of a memory or concentration deficiency. Id.

13. Dr. Pelc, a consulting expert, testified Mr. Whiting's "mental status examinations were within normal limits. . . . [and] Dr. Pelc's opinion is consistent with the treating records and the record as a whole." Id.

14. "[I]n the VA C&P examinations for migraines and back pain, claimant asserted the inability to work due to migraine

> headaches and back pain, but not due to any mental impairment." Id. at p. 18.

15. "Cognitive testing also does not support claimant's assertion of such severe memory limits, with testing noting only mild to moderate memory deficits . . . ." Id.

The ALJ's findings "adequately explain[]" the decision to reject Mr. Whiting's testimony concerning his claim of short term memory loss and those findings are "supported by the record as a whole." Lowe, 226 F.3d at 971-72.

**Migraine Headaches**

Mr. Whiting "testified to migraine headaches that occur 2 to 3 times per week or more, during which he is really sensitive to light and sound and has a pain level at 8 to 9. He stated the headaches typically last 2 to 3 hours, but can last up to 5 days, and he has to take medication and stay in a dark room and relax until it's over, after which he has to sleep for 5 to 6 hours." (AR at p. 10; see also Docket 10 at ¶ 48). Mr. Whiting claimed "no migraine treatment has worked . . . ." (AR at p. 11).

The ALJ discounted Mr. Whiting's complaints regarding the severity of the migraine headaches for the following reasons:

1. [The] Rapid City Regional Hospital ER records . . . largely show claimant's migraine headaches quickly resolve with narcotic medications. Id.

2. A July 2008 brain MRI was negative for objective findings. Id.

12

    3.      No treating or examining medical source has assessed claimant with ongoing limitations related to migraine headaches.  Id.

    4.      [O]ther than the annual [VA Compensation and Pension] examination, there is no evidence of ongoing treatment for headaches.  Id.

    5.      The record lacks evidence to support the ongoing frequency and severity of migraines the claimant testified to.  Id.

    6.      [T]he degree of medical treatment does not support this level of severity.  (AR at p. 11).

    7.      [Mr. Whiting] has strong financial incentive to exaggerate his report of the severity and frequency of his symptoms, and . . . limitation of function.  Id. at 18.

The ALJ's findings "adequately explain[]" the decision to reject Mr. Whiting's testimony concerning the severity of the migraine headaches and those findings are "supported by the record as a whole."  Lowe, 226 F.3d at 971-72.

**Anger Issues**

"Claimant testified to anger episodes during which he goes into a rage and needs to be away from people.  He stated he can get angry for no apparent reason, and the anger lasts 4 to 5 hours.  He stated he sometimes becomes violent, and has broken his hand from punching things.[7]  Claimant

---

[7] The ALJ acknowledged the one episode when Mr. Whiting became angry with his mother, walked away from the argument, and then fractured three fingers by punching the floor of his camper.  (AR at pp. 16 & 18).

stated when he was working, he had problems with his coworkers and lost some friend[s] because they don't understand he has to be alone." (AR at p. 17).

The ALJ concluded Mr. Whiting's testimony regarding the severity of his anger issues was overstated.  The reasons articulated by the ALJ include:

> 1. Mr. Whiting reported to the C&P examiner his inability to work was due to migraine headaches and back pain, with no mention of anger issues.  Id. at p. 18.  A similar declaration was made to Dr. Keohane in July of 2009.  Id. at p. 13.  Yet, Mr. Whiting claimed anger management was his biggest problem.  Id.
>
> 2. Psychiatric records show no history of violence.  Id. at 18.
>
> 3. "[T]he treating records . . . show claimant typically walks away from a situation [in which he becomes angry]."  Id.
>
> 4. Mr. Whiting's participation in a group anger management program was the only treatment program.  Id. at 13.
>
> 5. "Diagnoses were cognitive disorder NOS, and major depressive disorder recurrent and moderate possibly secondary to the cognitive disorder."  (AR at p. 14).
>
> 6. Mr. Whiting "has strong financial incentive to exaggerate his reports of the severity and frequency of his symptoms, and . . . limitation of function."  Id. at 18.

The ALJ's findings "adequately explain[]" the decision to reject Mr. Whiting's testimony concerning the severity of claimant's anger and its affect upon his life and those findings are "supported by the record as a whole."  Lowe, 226 F.3d at 971-72.

The ALJ properly considered Mr. Whiting's subjective complaints and found they were not credible in light of the entire record. Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006). The court is to "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal citation and quotation marks omitted).

**2.   THE COMMISSIONER'S UNFAVORABLE DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE IN THAT THE COMMISSIONER IMPROPERLY FAILED TO GRANT CONTROLLING WEIGHT TO THE TREATING PSYCHIATRIST'S ASSESSMENT OF PLAINTIFF'S FUNCTIONAL RESTRICTIONS**

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." House v. Astrue, 500 F.3d 741, 744 (8th Cir. 2007) (citation and internal quotation marks omitted). However, "while entitled to special weight, it does not automatically control, particularly if the treating physician evidence is itself inconsistent." Id. (citations and internal quotation marks omitted). If the treating physician's opinion is not given controlling weight under 20 CFR § 404.1527(d)(2), it must be weighed considering the factors in 20 CFR §§ 404.1527(d)(2)-(6). See Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) ("Where controlling weight is not given to a treating

15

source's opinion, it is weighed according to the factors enumerated . . . ."). The ALJ must " 'give good' reasons for discounting a treating physician's opinion." Dolph v. Barnhart, 308 F.3d 876, 878-79 (8th Cir. 2002).

In large part, Dr. Haas' main interaction with Mr. Whiting was to monitor and adjust his medications for anxiety and depression. See Docket 10 at ¶¶ 18, 20, 22, 24, 26, 27, 34, 40, and 43. Dr. Haas did not perform any objective testing and relied primarily on Mr. Whiting's statements regarding the fluctuation in his anxiety and depression. Id. In rejecting Dr. Haas' Medical Source Statement of Ability to Do Work-Related Activities, the ALJ found the findings of "marked" and "extreme" as "simply not supported by treating VA records . . . including Dr. Haas' own records." (AR at p. 17). There was no "documented testing conducted by Dr. Haas" and the cognitive functioning testing performed by the VA speech-language pathologist "only partially supported . . . 'mild to moderate memory deficits' . . . ." Id. The ALJ noted Dr. Haas' findings of marked or extreme limitations on Mr. Whiting's mental ability to perform work activities is "incongruous with" the doctor's recommendation that Mr. Whiting was "able to manage benefits in his own best interest . . . ." Id.

The ALJ is free to accept those opinions of a treating physician which are supported by the medical evidence and plaintiff's own testimony. See House, 500 F.3d at 744-46. "[W]hen a treating physician's opinions are

16

inconsistent [with] . . . the medical evidence as a whole, they are entitled to less weight." Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) (citations omitted).

When opinions of a consulting psychologist conflict with opinions of a treating psychologist, the ALJ must resolve the conflict. Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007). The ALJ performed the comparison, resolved the conflict, and justified his opinion accepting the opinions of Dr. Pelc over the opinions of Dr. Haas. (AR at p. 17). The ALJ gave the "greatest weight to the opinion of medical expert Dr. Pelc, who testified claimant can understand, remember, and perform simple tasks, and would not be precluded from all contact with others." Id. "Dr. Pelc . . . indicated the record of evidence did not reflect any description of significant limits in claimant's activities of daily living, and despite some reports of irritability, claimant maintained his family relationships, participated in group treatment (noted as cooperative), and was communicative and interactive with treating sources. . . . the mental status examinations were within normal limits." Id. The ALJ also found "Dr. Pelc's opinion is consistent with the treating records and the record as a whole. . . .[and] [t]he reviewing DDS reviewing medical opinions are essentially consistent with Dr. Pelc's opinion." Id.

The ALJ gave good reasons for not assigning controlling weight to Dr. Haas' opinion and discounting his opinions concerning Mr. Whiting's mental capacity to perform work-related functions. Dolph, 308 F.3d at 878-79. It is not the role of the court to re-weigh the evidence and it cannot reverse the Commissioner's decision as the decision is supported by good reason and is based on substantial evidence. Guilliams, 393 F.3d at 801.

3. **THE COMMISSIONER ERRED IN CONCLUDING THAT THERE ARE JOBS EXISTING IN SIGNIFICANT NUMBERS IN THE NATIONAL ECONOMY WHICH PLAINTIFF IS CAPABLE OF PERFORMING**

At step four of the evaluative process, the ALJ found Mr. Whiting had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [t]he claimant is capable of understanding, remembering, and carrying out one to two step instructions. He is limited to occasional contact with coworkers, supervisors, and the general public." (AR at p. 13). Mr. Whiting objects to this RFC arguing "[t]he frequency and severity of Whiting's migraine headaches, coupled with the anger episodes during which Whiting must segregate himself from people and any situations that are going to aggravate his anger, preclude fulltime employment." (Docket 12 at p. 22). "[T]he only residual-functional-capacity assessment that is supported by the record is that Whiting cannot perform any substantial gainful activity, as he cannot maintain the attendance requirements of full time competitive employment. Whiting is disabled." Id. at p. 23 (citation and bracketing omitted).

The ALJ concluded Mr. Whiting was "unable to perform past relevant work." (AR at p. 18). The ALJ acknowledged in establishing a RFC for Mr. Whiting, "[t]he claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations." Id. Rejecting Mr. Whiting's testimony concerning the severity of his nonexertional limitations, the ALJ accepted Dr. Pelc's opinions "that Whiting had moderate restrictions in his ability to interact appropriately with the public, interact appropriately with supervisors, interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting . . . [and] that Whiting could cognitively perform simple tasks with one and two step operations . . . . [and] could psychologically handle occasional contact with other people . . . ." (Docket 10 at ¶ 46). In accepting Dr. Pelc's testimony, the ALJ also discounted and gave less weight to the DDS reviewing medical opinions which concluded Mr. Whiting "might also have the ability to do some more complex tasks . . . ." (AR at p. 17). The ALJ's RFC determination is supported by good reason and is based on substantial evidence. Guilliams, 393 F.3d at 801.

"The hypothetical question posed to the vocational expert must capture the concrete consequences of [the] claimant's deficiencies." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (internal quotation marks and citation omitted). "Likewise the ALJ may exclude any alleged impairments . . . properly rejected as untrue or unsubstantiated." Id. The

ALJ asked the vocational expert a hypothetical question tied to Mr. Whiting's RFC and then followed up with another hypothetical question. (Docket 10 at ¶ 53; <u>see also</u> AR at p. 19). Both hypothetical workers having Mr. Whiting's nonexertional limitations "would be able to perform the requirements of representative occupations . . . in the U.S. economy and . . . in the region." (AR at p. 19).

The ALJ's finding of Mr. Whiting's RFC is supported by substantial evidence. The hypothetical questions and the vocational expert's answers to both hypothetical questions constitute substantial evidence supporting the ALJ's determination Mr. Whiting was not disabled. <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 889 (8th Cir. 2006). The ALJ's decision is free of reversible error. <u>Smith</u>, 982 F.2d at 311.

## ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 11) is denied.

IT IS FURTHER ORDERED that judgment be entered in favor of Acting Commissioner Carolyn W. Colvin and against plaintiff Michael J. Whiting.

Dated March 12, 2013.

BY THE COURT:
/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE